UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROSSCODE INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>ADITYA R. SHARMA,<br><br>    Defendant. | Case No. 20-cv-00104-VC<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 12 |

    Crosscode, Inc. brought this lawsuit against Aditya Sharma, its founder and former CEO. Crosscode is a software company that, in its words, develops "cloud-based information technology mapping software" under the name "Panoptics." After Crosscode's shareholders removed Sharma from his position as chairman, and after the newly constituted board terminated Sharma from his position as CEO, Sharma invoked a previously undisclosed licensing agreement in an attempt to prevent Crosscode from continuing to use the Panoptics software, and in an attempt to deter further investment in Crosscode. Crosscode contends that the licensing agreement is fabricated and seeks (among other things) a court order declaring it to be invalid.

    Crosscode initially applied for a temporary restraining order against Sharma. That request was granted after Sharma defied an order to respond and instead filed a dueling suit in the District of Minnesota. *See* Complaint, *Sharma v. Crosscode, Inc.*, No. 20-cv-436, Dkt. No. 1 (D. Minn. Feb. 3, 2020). The temporary restraining order bars Sharma from: (i) invoking any and all provisions of the purported licensing agreement; (ii) using, in any way, Crosscode's software and intellectual property, including the Panoptics software, and (iii) engaging in any intentional spoliation efforts. *See* Dkt. No. 21.

Under the familiar requirements for a preliminary injunction, Crosscode must demonstrate that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent the injunction; (3) the balance of equities tips in Crosscode's favor; and (4) the public interest is served by an injunction. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Crosscode has staked its motion for a preliminary injunction solely on its claim that the already-mentioned licensing agreement is fabricated or otherwise unenforceable.

As an initial matter, Sharma contests the exercise of personal jurisdiction over the declaratory relief claim. Of course, a court lacks the power to enjoin a party outside its jurisdiction, so this objection must be addressed at the outset. *Hendricks v. Bank of America, N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005). The Ninth Circuit applies a three-prong test for personal jurisdiction: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Sharma argues that this contract dispute—his attempts from Minnesota to enforce the purported licensing agreement against Crosscode, a corporation that relocated its principal place of business from Minnesota to California after Sharma's ouster—doesn't arise from or relate to California in a way that supports the exercise of specific jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco County*, 137 S. Ct. 1773, 1780 (2017). Sharma analogizes this case to a declaratory relief action brought by an accused infringer against a patentholder whose only contact with the forum state is a series of letters threatening to sue the accused infringer. Under those circumstances, the Ninth Circuit has held, the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice." *Cascade Corp. v. Hiab-Foco AB*, 619 F.2d 36, 38 (9th Cir. 1980); *see also Stairmaster Sports/Medical Products,*

*Inc. v. Pacific Fitness Corp.*, 916 F. Supp. 1049, 1053–54 (W.D. Wash. 1994).

But this case does not involve the mere assertion of one's rights across state borders. As explained below, Crosscode is likely to establish that Sharma fabricated the licensing agreement in an attempt to regain control of a California company, to demand that Crosscode fire its California-based chief technology officer, and to dissuade Californians from investing in Crosscode. *See* Ex. E, Notice Revoking License, Dkt. No. 12-9; Toghraie Decl. ¶¶ 13–14, 19, Dkt. No. 12-3. His avowed intent, in short, is to either reclaim or destroy Crosscode. *See* Ex. D, Dkt. No. 12-3. Sharma is therefore purposefully directing his conduct toward California; that he is doing so from Minnesota by mail, phone, or computer doesn't change that fact. *See Walden v. Fiore*, 571 U.S. 277, 285–87 (2014); *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). Moreover, although not necessary to sustain the exercise of personal jurisdiction, Sharma also purposefully availed himself of California by contracting with two other California entities with prominent roles in this dispute—first, by hiring R Systems, a company headquartered in India and in California, to develop Crosscode's software, *see* Master Services Agreement at 1, Dkt. No. 12-4; and second, by retaining Liquid Venture Partnerships (LVP), a California entity, to raise capital from investors, a decision that led to the current corporate war between Sharma and the directors installed by LVP, *see* Clifford Decl. ¶¶ 5, 10, Dkt. No. 12-7. Nor is there anything fundamentally unfair about forcing Sharma to litigate in California. In fact, Sharma agreed to resolve disputes with R Systems in California, and this case relates to the ownership interests in the resulting software. Master Services Agreement art. 17.8–.9. For these reasons, too, venue is proper in the Northern District of California, where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).[1]

Moving to the merits, the licensing agreement—dated August 16, 2017, and signed by Sharma on behalf of both himself and Crosscode—declares Sharma to be the owner of the

---

[1] As Sharma notes, none of his alleged conduct that postdates the filing of the complaint factors into the personal jurisdiction analysis. *See Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980).

Panoptics software and grants Crosscode an exclusive license to market, sell, and develop Panoptics in exchange for 20% of its global sales revenues. Ex. D, License Agreement §§ 1–2, 16, Dkt. No. 12-9. Crosscode argues that Sharma fabricated the license and that, even if he didn't, the license lacked consideration under Minnesota law and is voidable under Delaware law.

Sharma contends that the declaratory relief claim is unripe because the Patent and Trademark Office has not yet approved the utility patent application for the Panoptics software, but this objection mischaracterizes the nature of the claim. Crosscode does not seek a judicial declaration of the utility patent's validity or its right as a patentholder to exclude others from practicing the invention—requests that presumably would not be ripe for adjudication until the PTO issues the patent. Rather, Crosscode has requested a declaration of the invalidity of the licensing agreement that Sharma is currently invoking to prevent Crosscode from using the Panoptics software. That is a contract dispute, not a patent dispute, and it is plainly ripe. Indeed, Sharma has asserted a breach-of-contract claim based on the licensing agreement in the Minnesota action. *See* Complaint ¶¶ 76–80, *Sharma v. Crosscode, Inc.*, No. 20-cv-436. Thus, Crosscode may "challenge the basis for the threat" by Sharma to terminate Crosscode's rights in the Panoptics software. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007).

Crosscode is likely to succeed on its declaratory judgment claim because the record strongly indicates that the licensing agreement is fabricated. Sharma surfaced the agreement only after being ousted from his role at Crosscode, and then only after asserting and withdrawing allegations that Crosscode had committed securities fraud. *See* Exs. A, B, D, Dkt. No. 12-7. Crosscode has no record of the agreement, and it has never paid royalties to Sharma in the more than two years the agreement purportedly existed. Gandhi Decl. ¶ 6, Dkt. No. 11-5. All of Crosscode's former and current board members and officers currently attest that they had never seen the licensing agreement until Sharma invoked it. Clifford Decl. ¶ 17; Desai Decl. ¶ 18, Dkt. No. 12-6; Gandhi Decl. ¶ 5; Khan Decl. ¶ 9, Dkt. No. 32; Sarkar Decl. ¶ 10, Dkt. No. 12-4; Toghraie Decl. ¶ 21. The only Crosscode employee who once claimed awareness of the

agreement has since retracted that claim, explaining that he signed an affidavit prepared by Sharma's former attorneys without adequately reviewing it. Khan Decl. ¶¶ 7–8, 10; Ex. A, Donovan Letter, Dkt. No. 33-1. Finally, according to the representatives of LVP, Sharma represented that Crosscode owned the Panoptics software, and he also failed to disclose the document in response to relevant requests during LVP's due diligence process. *See* Clifford Decl. ¶ 8; Ex. A, Due Diligence Checklist § 2.8, Dkt. No. 12-6.

To rebut this evidence, Sharma produced an email that he allegedly sent to a Crosscode employee, Ralph Alterbaum, that purports to attach an agreement pertaining to intellectual property. *See* Ex. B, Alterbaum Email, Dkt. No. 28-3. But that email appears to be fabricated as well; Alterbaum is now deceased, and the email cannot be found on Crosscode's server along with the other emails from Sharma's account. Ex. C, Form S-1A at 38, Dkt. No. 12-9; Gandhi Supp. Decl. ¶ 8, Dkt. No. 33-2.

In addition to the shady circumstances of the licensing agreement and Alterbaum email, Sharma likely submitted false evidence in support of his Minnesota lawsuit, a potential serious wrong that his California counsel perpetuated by repeating to this Court. *See* Opposition at 9 n.3, Dkt. No. 28.[2] Sharma presented text messages that purported to be from Ajay Singh, an Indian software developer who has collaborated with Sharma, describing how people in India working under Crosscode's direction physically assaulted Singh. RJN, Sharma Decl., Ex. I, Dkt. No. 34; *see also* Anush Sharma Decl. ¶¶ 8–9, Dkt. No. 28-14. That story is fanciful on its face, but Singh further punctured Sharma's credibility by filing an affidavit stating that the incident never took place and that he never sent the texts. *See* Ex. D, Singh Decl. ¶¶ 4–5, Dkt. No. 33-1.

The judge in Minnesota likewise found "substantial reason to believe that some of the evidence introduced on the Sharmas' behalf may be fabricated, including the purported license agreement and the purported text messages from the software developer." Stay Order at 14 n.4,

---

[2] Sharma's attorneys should keep in mind that all factual contentions, even those placed in footnotes, must be supported by "an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b)(3).

5

*Sharma v. Crosscode, Inc.*, No. 20-cv-436, Dkt. No. 28 (D. Minn. Feb. 19, 2020). Possibly in an attempt to cover up evidence that he produced these fabrications, Sharma wiped his computer with the software "File Shredder" after receiving a preservation notice from Crosscode. Ex. F, Preservation Notice, Dkt. No. 12-9; Kunkel Decl. ¶¶ 8–11. The upshot is that, on this record, Sharma's representations seem to be false and designed to manipulate the legal process.

Even assuming that the licensing agreement is not fabricated, Crosscode is likely to prove the agreement is unenforceable under Minnesota law for lack of consideration. R Systems assigned the rights in the software to Crosscode, *see* Master Services Agreement art. 5, and Sharma assigned his rights in the patent application to Crosscode, *see* Ex. B, Patent Assignment, Dkt. No. 12-9. Sharma later executed the agreement that purports to license that intellectual property to Crosscode for a royalty. Because Crosscode likely already owned the intellectual property at issue, there was likely "no sufficient consideration to support this new promise" to pay Sharma for a license. *Tonka Tours, Inc. v. Chadima*, 372 N.W.2d 723, 728 (Minn. 1985).[3]

Sharma, instead of defending the licensing agreement, turns his sights to a different issue: his allegedly illegal ouster from the board of directors. Sharma points to a provision of Crosscode's bylaws that, "whenever stockholders are required or permitted to take any action at a meeting," guarantees stockholders "notice of the meeting" "not less than 10 days . . . before the date of the meeting to each stockholder entitled to vote at the meeting." Ex. F., Crosscode Bylaws § 2.4, Dkt. No. 28-7. Assuming his ouster is relevant to this contract claim, the bylaw, by its own terms, applies only to actions taken at a meeting. Here, a majority of shareholders removed Sharma by written consent, not by vote at a meeting. *See* Ex. C, Written Consent, Dkt. No. 33-2. Delaware law preserves the ability of shareholders to act immediately by written consent outside the confines of a meeting. 8 Del. Code § 228(a); *Allen v. Prime Computer, Inc.*, 540 A.2d 417, 420 (Del. 1988).

---

[3] Crosscode also argues that the licensing agreement is void for failure to secure formal approval of this related-party transaction. *See* 8 Del. Code § 144(a); *Espinoza v. Zuckerberg*, 124 A.3d 47, 63 & n.87 (Del. Ch. 2015). That alternative ground need not be considered for purposes of this motion.

The other three requirements for a preliminary injunction are easily met here. Crosscode's financial health is tenuous, and its primary selling point to investors is its intellectual property. *See* Gandhi Decl. ¶ 7. Because the shadow cast by the purported licensing agreement is likely to scare away potential investors, *see, e.g.*, Toghraie Decl. ¶ 23, Crosscode faces financial ruin absent an injunction. Nor does the fact that Crosscode first attempted to mediate this dispute with Sharma undermine the finding of irreparable harm. Although the absence of irreparable harm can often be presumed from a plaintiff's delay in seeking interim relief, a plaintiff that first seeks a mediated solution is not necessarily sitting on its rights, and in any event, delay is rarely reason alone to deny relief. *See Arc of California v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014). The balance of equities tips strongly in Crosscode's favor because Sharma likely fabricated the licensing agreement and intentionally destroyed relevant evidence. And an injunction is in the public interest to prevent further wrongdoing by Sharma—wrongdoing that threatens the company's continued existence and undermines the integrity of the judicial process.

One final issue remains: the scope of the preliminary injunction. To the extent that Crosscode seeks to enjoin Sharma from invoking the licensing agreement while the litigation is pending, that request is supported by Crosscode's declaratory relief claim relating to the validity of that agreement. But Crosscode also seeks to enjoin Sharma from using its intellectual property. This is a mismatch with the declaratory relief claim, which does not seek adjudication of Sharma's ability to use Panoptics. Although Crosscode will, in all likelihood, be able to prove both its ownership of Panoptics and its right to prohibit Sharma from using the software to set up his rival company, RapiDex, the Court cannot currently issue such an injunction. As discussed at the hearing, Crosscode may file an amended complaint to assert claims regarding Sharma's potentially unlawful use of the Panoptics software and then move to amend the preliminary injunction.

*   *   *

To sum up, while this litigation is pending, Sharma is enjoined from invoking the

purported licensing agreement or any provisions from it. In addition, Sharma is enjoined from hiding, altering, or destroying evidence. Sharma and his lawyers continue to be obligated to preserve all evidence that could potentially be relevant to this case. Finally, as discussed at the hearing on the preliminary injunction motion, a hearing will take place on June 22, 2020, to determine whether judgment should be entered in Crosscode's favor based on Sharma's fabrication and destruction of evidence.

**IT IS SO ORDERED.**

Dated: March 3, 2020

VINCE CHHABRIA
United States District Judge